Welcome to the United States Court of Appeals for the Fourth Circuit. We have three cases on for argument this morning. First up, 23-4467 and 23-4587, United States v. Jackson. Mr. Good morning, Your Honors. May it please the Court, my name is Elliot Abrams and I represent the appellant, Dr. Anita Jackson. In this case, the Federal Government created and then enforced its own standards of care with respect to the use of certain medical devices. It did so in contravention of the plain language of the statute and in violation of the purpose of the Act. It did so without consulting medical authorities and it did so using the full coercive power of the Federal criminal law. Each of Dr. Jackson's convictions and her 25-year sentence should be vacated and the adulteration charge should be dismissed or a judgment of acquittal entered on that count. The first reason that the adulteration charge is defective is that a doctor or any medical provider does not hold medical tools for sale when they use them in the provision of a medical service. So, in this service, though, about understand the record, one of these devices would be used for a sinus operation and the doctor would bill Medicare or Medicaid for that instrument? No, Your Honor. I thought she said she made $1,200,000 off of billing for using the same devices. No, Your Honor. So, at JA 997-1059 and 1064-65, the lead agent for the government testified that Medicare pays for the service, not for the device. He testified that Medicare doesn't have restrictions requiring certain devices to be used for the particular service being billed for and he testified that there is no line item on the bill that Medicare is paying for. Well, somebody has got to be paying for the device. How does that work? So, the doctor is paying for the device and the service itself does not require this device. It doesn't require a single-use device. It just requires the words of the CPT code, say, a balloon or other device. That issue is also discussed at 1418 to 1419. But there is no dispute that this device was the one being used in most, if not all of the procedures? She used this particular device in most, if not all of the procedures. I think the issue is that she didn't bill for the device, just like a roofer doesn't bill. That's because the cost of the device, I think, would be incorporated in the service, wouldn't it? It could be, just as a roofer's bill. Roofer's tools, like a roofer's hammer, could be incorporated into their provision of, you know, the service of redoing my roof, or I've billed. But they're not billing Medicare or Medicaid for that. They're not, Your Honor, but they are billing, you know, doctors bill people as well. And so, you know, this issue of, it's a fundamental question of whether a physician holds a device for sale when they provide a service. And our contention is, just like a roofer doesn't hold a hammer for sale, just like lawyers don't hold ink pens for sale just because they use them in providing their legal services, medical service providers don't hold their tools for sale when they provide services. And the Supreme Court in Sullivan said that this term, held for sale, is unambiguous. And then it tells us what the term means. It says, it's held in anticipation of a purchase, didn't use the word purchase, excuse me, it says held in anticipation of having the device passed into the hands. So that's the quote, passed into the hands, and then I'm saying that means it's purchased, because then it uses the word by way of a transaction. So in Sullivan, the Supreme Court says it's an unambiguous term. It tells us that the term means what it unambiguously means. Now, I'm asking this court to apply that unambiguous plain language for a number of reasons. And one of those reasons is really important here, and that is that under 21 U.S.C. 360-K, the FDCA contains an express federal preemption provision. That provision says if, it says states and any political subdivision of a state is barred from imposing different or additional restrictions on devices. Before we get too far down this road, one of the things I neglected to ask early on was, what do you contend the standard of review is for this claim? Because there are all kinds of allegations from the government or assertions that most have not, I mean the ones that matter anyway, the assertions weren't properly preserved. So what's your position on that? Our position is that this was absolutely preserved, Your Honor. When you look at the ruling that we've appealed from, the district court says I'm finding that this indictment states a claim based on Kaplan. And the issue in Kaplan is the issue here, the health percentage. Yeah, I mean Kaplan was about a great many things, and beyond saying that he's deciding the case based on Judge Debra, I think deciding the case based on Kaplan, it doesn't really focus on this particular issue, nor did the, were you the trial counsel? I was not, Your Honor. Nor did the lawyer focus the court's attention on this particular issue. Do you agree? I agree that the briefing did not raise the Kaplan issue directly. What, there's a number of different reasons why the court was on notice. Are you talking about whatever your briefing was in the district court, your argument to the district court, or the briefing here? District court, Your Honor. Both the briefing and the argument. There wasn't a hearing that went into all this, so looking at the briefing, what we have is a motion to dismiss for failure to state a claim. We have the judge then saying, I find that the offense states a claim because I'm looking at Kaplan. And the issue at Kaplan was the issue here. And so the court, you know, this is a very careful court, as all courts are. The bottom line issue is how did you alert the district court that its decision was incorrect? So, rather than approach it that way, Your Honor, the way we're asking the court to look at the preservation issue is the fact that when a court makes a ruling and that ruling is legally erroneous, that ruling is appealable. And here, the court said, I'm upholding the indictment based on Kaplan. The holding in Kaplan is that these things are held for sale. Well, did you discuss that case prior to the district court's ruling? No, Your Honor. And the district court noted that neither side raised this and said, I found this issue and I'm saying that it states an offense based on Kaplan. And you say the Kaplan case is all about this held for sale, but Kaplan dealt with a number of issues, five, I think, by my count. And the issue that is relevant to this case that would have been relevant here is this held for sale issue. And that's, there's a lengthy discussion at page, in cases we cited at page 15 of our brief, where this same framework is used to say, look, when the district court shows that it was on notice of an issue, it clearly read Kaplan, that you can appeal the legal ruling because the district court had an opportunity and took an opportunity to address the issue. And these are pure legal rulings, so it's not, you know, I think it's somewhat different, for example, than a factual situation where you've got to let the district court do its own evaluation. Here, y'all are in the same position as the district court. We can all review the words held for sale. We can all review the case law. We can all review the indictment and just say, does it state an offense? And so this court's in no worse position because of the district court, because of this not being detailed in the briefs. We did 100% raise the legal claim that this count fails to state an offense, and the court relied on Kaplan in rejecting that. So we believe, under the DuSorio line of cases, and just the rule for preservation, that we've asked... Do we have to find that Kaplan is wrong in order for you to prevail? Yes. I'm asking this court to go against Kaplan. In fact, the government's really not fully embracing Kaplan. The government wants this court to go beyond Kaplan and say that doctors hold all devices for sale, whether or not they're labeled a single use. So there's neither party up here saying Kaplan got it right. We're saying Kaplan got it wrong. The government's saying Kaplan didn't go far enough. But if we happen to agree with the district court, just for purposes of argument, that Kaplan was correct, we would have to say Kaplan was wrong in order to find for you. That's correct, Your Honor. And I think Kaplan is wrong for a number of reasons. One of which is people don't use the term held for sale when they're talking about the tools of providing a service. And Justice Scalia, then as a D.C. Circuit Judge in Cheney, says this is not what this term means. He provided a detailed analysis of the absurdity that would result, saying... I'm going to quote from the Cheney dissent, which was ultimately... The Supreme Court reviewed the case and reversed the D.C. Circuit. He says, given the statutory language held for sale, it's clear that when the House report said that the intent of the 1983 amendment was extended to the protection of consumers contemplated by the law to the fullest extent constitutionally possible, it was using the word consumer in the sense of purchaser rather than ingester. And then he continues to say the consequences that would ensue from this interpretation that held for sale means held for use by a doctor are implausible as the interpretation that produces them. It cannot be seriously thought that the householder who places a drug in an unmarked bottle on his medicine shelf to administer later to his child violates the criminal provisions of the F.D.C.A. That would be the result in this case if you say that held for use means held for sale because a doctor who takes a package of tongue depressants and then puts them into an unmarked jar violates the misbranding and adulteration provision at issue here if it applies to them. You're not allowed to remove a label from a device. You have to store it in a particular way. And so all of the F.D.C.A. is about and the Supreme Court in Buckman says this. There is a specific quotation in Buckman and I apologize for not citing it in my brief. I found it two days ago. It says that the F.D.C.A. is about regulating marketing and distribution and then it uses a quote, not use of devices by physicians. So we don't obviously that don't lightly ignore anything that Justice Scalia has to say in most things but that was a dissent. The D.C. Circuit felt otherwise and I think there are at least three other circuit courts that disagree with you. So what are we to make of those decisions? So none of those, there's only one case here. It's the diapsil case 1975 Second Circuit. It's like a one sentence per curiam opinion that actually addresses devices. The others address drugs. Drugs are different. You know, if I, drugs, for example, returning to the roofer analogy, if a roofer comes and re-shingles my house, maybe I purchase the nails. They stay with me. I have the title to the nails. I've got the title to the shingles but I don't purchase the hammer. Drugs, I ingest. But the devices, I don't keep. I don't have the title to them. And so the drug analogy is not the appropriate analogy and the drug context is what all of those cases except the one two sentence case that's a drive-by ruling that wouldn't be precedential in this circuit because it has no analysis. So there's not this whole body of case law on the government side. There's Kaplan. Kaplan misread and Justice Scalia says that one of the cases that the Kaplan court relied on is wrong. And so you've got this whole issue of if you just use the plain language, which is what we do when we read statutes unless they lead to an absurd result. What else would it make? You will probably say it doesn't make a difference. We're not dealing with an adulterated hammer or an adulterated nail. We're dealing with an adulterated medical device. So how does that impact this held for sale concept? It doesn't because it's a threshold question. If it's held for sale, then the FDCA regulates it. And under this preemption provision, then the states can't regulate it. And that's why I asked this court to really look at 360K because if you break it, you bought it situation. Once the federal government regulates something under the FDCA, it preempts the states from doing it. And so in the Kaplinger case, which I cite repeatedly throughout my briefing, it's a Justice Gorsuch case when he was with the Tenth Circuit. The dissent there talks about this issue and says that practitioners are not covered by these rules. It says the prohibitions against misbranding or adulteration do not limit the ability of doctors to exercise professional judgment in their use of approved devices. It says, however, state tort remedies such as malpractice ensure those practitioners employ devices in line with professional standards of care. You would upset the balance. You would take away from the states the ability potentially to regulate doctors' use of devices because it's preempted for states to have different or additional requirements. And so it's not just let's add this protection to consumers. It's who's in the better position. And really, it's who did Congress want to do this. And I know my time is running out, but Congress, as the U.S. Supreme Court said in Buckman, Congress wanted the states to regulate the doctors and wanted the federal government to regulate the marketers and the distributors. Thank you, Mr. Abrams. Thank you. Ms. Allen. Sorry. Thank you, Your Honor. Katherine Allen on behalf of the government. I would like to start with the standard of review. In this case, Jackson did not challenge the held for sale element of the offense when Jackson challenged the indictment. She challenged the indictment on three grounds. She challenged the standard of adulteration as unconstitutionally vague. She challenged the allegations regarding intent to defraud or mislead because she argued that sterility, the word sterile, was also vague. And she challenged the intent to defraud or mislead element on the ground that this was off-label use. Now, none of those challenges involved held for sale. The district court then rejected her challenges to the indictment and did cite Kaplan. And as Your Honor noted, Kaplan addresses a number of issues, including two of the issues that she did raise in her motion. And that is the intent to defraud and mislead element as well as off-label use. So I don't think that the district court's invocation of Kaplan, when it was rejecting the challenges that Jackson did make, in any way indicates that the district court was considering the held for sale argument. And the district court in this case issued very thorough oral and written rulings. And the held for sale element isn't discussed at all. So your view on this particular issue is that it's plain error review? That's correct, Your Honor. And, well, if the district court had in fact considered the issue, even if the defendant had not raised it, and we have cases that suggest that in that instance we don't apply plain error review, right? That's correct. And in the case that Jackson relies on in her appellate briefing, I apologize, I can't remember if it was from this court or not, but the court of appeals stated that the district court had thoroughly considered the issue on the record. And that's really a far cry from what we have here, where there's nothing in the record discussing the held for sale element. And we think that Jackson hasn't shown that there was any error with respect to the interpretation of held for sale here, and she certainly hasn't established that any error would have been clear or obvious. And that's because every court to consider this issue has held that when a doctor holds a drug or device for use on treating patients, during treatments that are sold to patients, that those drugs or devices are held for sale within the meaning of 331K. And that's... Well, the district council cited the record, which I'll have to say I had not seen before, and got the contrary impression from reading the district court's opinion in the briefing, that when a physician bills Medicare or Medicaid, they aren't identifying this cytoplasty device on the billing. Is that correct? It's correct that it's not an itemized billing. There was testimony, but I don't think counsel's suggestion is correct. So the testimony that's at issue here with respect to the way that Medicare is billed is that there are certain procedure codes that a doctor uses to bill Medicare, and that those procedure codes include the cost of the equipment that the doctor uses. And I can point the court, if you'll just give me one second, to the specific... So at trial, at JA1403, there was testimony that part of the amount reimbursed takes into account covering the cost of the equipment for the surgery, and that Medicare pays the same amount as when an individual pays for, quote, that surgery and that device out of their own pocket. And again, on redirection... Who was testifying there? Quindosa. And he was testifying about how Medicare billing works. So I think that there is evidence. And again, we're here after a judgment of conviction against Dr. Jackson, so all of the evidence has to be taken in the light most favorable to the verdict. And here, I think if the court looks at JA1403 to 1404, it's clear that there was testimony that the cost billed to Medicare includes the cost of the device. And again, just stepping back, you know, Jackson relies on Sullivan, and I think the Supreme Court's decision in Sullivan supports the government's interpretation here. In Sullivan, the Supreme Court held that Section 331K was added to the FDCA in order to ensure that drugs were regulated from their point of manufacture all the way until the time that they reached the ultimate consumer. And that's exactly what happened here. And I would also urge the court to look at the Hippolyte Egg Company case. And in that case, the Supreme Court rejected an argument very similar to the argument that Jackson's making here. It involved the phrase for sale. And in that case, the argument was that the eggs that were shipped in interstate commerce weren't going to be sold by the bakery. Instead, the bakery was going to use the eggs as raw materials. The Supreme Court rejected that argument and held that those eggs were within the scope of the predecessor to the FDCA because they were not for personal consumption. And so I think just in the same way here, as the balloon sinuplasty devices that we're talking about are still in the stream of commerce. And the way that they reach the patient is through the doctor's sale of those services. And again, every court to consider this issue has agreed with the government's interpretation. And I would also say Jackson suggests that we're somehow walking away from Kaplan. We've explained in our brief that the government does have a, you know, sorry, that our view of the FDCA and its regulation of devices extends beyond just single-use devices. But we're in no way disagreeing with Kaplan's conclusion that single-use devices are covered under the FDCA. And again here, the government's point is that when we're talking about the FDCA, which is a comprehensive scheme that regulates drugs and devices from the point of manufacture until they reach the ultimate consumer, which here is the patient, that the FDCA treats drugs and devices that are stored in a warehouse the same as it treats drugs and devices that are stored in a doctor's office. And we don't think that Jackson has shown any error here, much less plain error. If I could just, I also just, you know, Jackson has argued here that drugs should be treated differently than devices because drugs are often injected into a patient. And as we noted in our brief, you know, devices can be implanted in a patient as well, pacemakers, artificial valves, artificial joints. And there's no reason that Congress would have treated those any differently than devices such as the one at issue here that are being inserted into a patient's nose. And lastly, just to respond to Jackson's other argument suggesting that it's going to somehow upset the balance of power here, I would just want to reiterate that since the Supreme Court's interpretation in the Hippolyte Egg Company in 1911, all the way through Sullivan and all of the court of appeals cases, all of those cases have viewed the FDCA in the same way that the government is arguing here. And so I don't think that this court's siding with the government's interpretation of held for sale would in any way upset the balance that has existed for many, many years. If there are no further questions. I have a question about the per se jury charge. And I noticed in your brief you all don't, are you all conceding that the judge gave an incorrect charge? Absolutely not, Your Honor. Okay. Sorry. Go ahead. So the judge, Jackson's argument regarding the alleged per se theory goes to the standard for adulteration. And here the district court quoted in the jury instructions, it instructed the jury that to find Jackson guilty of adulterating medical devices, it had to find that she had held the devices in conditions that may have rendered them, sorry, in sanitary conditions that may have rendered them contaminated with filth or rendered injurious to health. The court then instructed the jury that the terms filth, that the term filth should be given its plain and ordinary meaning, understanding. And so there's no way that the jury could have found her guilty based on those instructions, based on a per se theory. And I also just want to point out that the government, this case would look entirely different if the government had been pursuing a per se theory. The government's theory in this case from the indictment through the proof at trial has always been that the particular facts of this case satisfy the standard of adulteration and show that these particular devices, because of the way in which she stored them, the fact that she wasn't cleaning them properly. You know, there's also testimony about that the devices looked yellowed or they had rust or the balloon portion wasn't sliding properly on the device. There was a lot of evidence at trial and there are similar allegations in the indictment to meet the statutory standard for adulteration. And again, the jury couldn't have convicted her under the instructions that the court gave without finding that that statutory standard was met. Even though opposing counsel didn't get to it, if I'm remembering this case correctly, there was also an issue raised as to an improper golden rule argument. Why don't you just give us a short explanation of what you reviewed? Sure, Your Honor. So that argument wasn't raised in the district court, and so it should be reviewed by this court for plain error. We don't think that Jackson has met the prongs of the plain error standard here. She hasn't shown that there was any improper golden rule argument. It's true that the government counsel did use the word you, but the government was not in any way asking the jury to convict if they would have want, sorry, was not asking the jury to convict her because, sorry, but the government, sorry, used the word you, but that was in getting the jury to use their common sense to determine whether patients would have viewed it as material, whether she was properly cleaning these devices. But wasn't he or she, I don't know if it was he or she, asking the jurors to put themselves in the shoes of the patients who were being subjected to this procedure with this adulterated device? Isn't that a classic golden rule argument? I don't think it was a classic golden rule argument, Your Honor. I think what the attorney was doing was asking them whether they would want a clean device or not, and then the attorney then brought it back to the question of the patients. And here, all the government attorney was trying to do. So that was a mini golden rule argument, a truncated golden rule argument. I don't think so, Your Honor. I mean, the attorney was trying to ask the jury to use their common sense in determining whether it would have been material to their decision whether to have the surgery. Well, that's a good argument, but he didn't say that or she didn't say that. She said, would you want a doctor to use that device on you? Your Honor, and then the government was just explaining why the choice between a sterile device and a possibly contaminated device was material. And there's no clear or obvious error here with respect to... Well, that may be your argument, I suppose, but whether or not there was an error, I think is a closer call. It may not be plain. I don't think that there was an error here. Again, this all needs to be considered. You know, when you look at the argument in context, she plucks a few statements here and there out of the argument. But the attorney brought it back to the correct legal standards and to the question of these patients, referred to all of the patients that had been before the court and the testimony about whether they were given that choice between a sterile device, whether they were given the choice to have a sterile device. So, again, the attorney brought it back to the correct legal standard and to the question of whether the patients here would have had that choice and whether it would have been material to their choice. So I don't think that there was an improper golden rule argument. But, again, I also don't think that she satisfied the plain error standard here. And I would point out she argues the plain error doesn't apply, but the case that she relies on is one in which the attorney did raise the argument right after the allegedly improper golden rule argument and in a motion for a new trial. And here, Jackson didn't raise the argument at all in the district court. So we think relying on the cases United States v. Husky and the other case that we cited in our brief, that it would be reviewed for plain error. And she also brings up this issue with Dubin in this argument that it was overbroad, that I believe the jury charge in the indictment was overbroad. And so I guess my question is how is this case distinguishable from Dubin in this crux of the fraud analysis? Sure, Your Honor. So Dubin involved a very different situation than here. In Dubin, Dubin involved Medicare fraud. And the fraud that was at issue was that the defendant was overbilling for a psychologist services when it wasn't actually a psychologist who was performing the work. And so in that case, the fact that when the defendant submitted the bills, he used a patient's name, that was ancillary to what it was that made his conduct fraudulent. This is a very different situation. Here, we're talking about classic identity theft. We're talking about a declaration in which the person who signs the declaration, on the face of a declaration, it states that I, the person signing this, am attesting to the following facts. And she was forging, she and her employees were forging patient signatures and backdating those declarations. So what made those declarations false was the forged signature. And so it goes directly, the use of the identity in this case goes directly to what made them false. It wasn't an ancillary use of an identity where the falsity had to do with who the provider was. Here, the falsity had to do with whether or not the patients had signed the declarations and they hadn't. So this is a classic case of identity theft. The Sixth Circuit and the Tenth Circuit, as we cited in our brief, found that in similar situations there was any error was harmless because it was a case of classic identity theft. We think that there was no error here and it was harmless. So we think the same analysis would apply here. Thank you, Ms. Allen. Thank you. If I may start with this golden rule argument, I think it informs two issues. The first is what Dr. Jackson was actually charged with. The government, in its brief at 34, says it doesn't matter that she reused the devices. They're running away from the charge in this case. So what's our, are we using plain error here? No, the government concedes that this issue was raised below that the concept of the charge not stating an offense because reuse is not. No, I'm asking about the golden rule argument. I thought that's where you started. So the golden rule argument, I don't, it wasn't raised below. We've cited the Leathers case that says you don't have to object. And so I don't, the court can decide whether that means you don't have to object ever in the district court or just not right when the argument is made. There is a district court saying you don't have to. But you never objected. Not in the district court, Your Honor. But we did object to the indictment not stating an offense because it was based on reuse, not actual adulteration. And the government says now, look, the indictment, it doesn't matter that she reused. But if you look, this is the second page of the indictment. It says what the crime she's charged with, reuse of single-use devices. Now they're saying that doesn't matter, that it just matters that the devices weren't clean. The entire record below shows the district court thought what mattered was she reused devices that were labeled as single-use. It prohibited her from testifying that the devices were not contaminated. It said repeatedly that that was irrelevant. It said that at 3157, she testifies, and then 3161, 3167. She's trying to say what she did, which is she tested these devices after she cleaned them. How can they be adulterated if they're clean? They can't be. Well, it doesn't matter according to district court. It's irrelevant according to the district court because she's not charged with not sufficiently cleaning them. She's charged with what it says in bold and underlined on page 2 of the indictment, reuse of a single-use device. That is not what the government defends now. That was raised below. It's not a crime to reuse a single-use device. It's just not. The government doesn't say it is. And so when you look at this case, and I spent too much time, I guess, on the first issue, that issue, they can't overcome that. They have to try to change the indictment to uphold it. The indictment says what it says. They can't amend it, and they try to amend it at page 34 saying it's irrelevant that she administered the devices. How can that be? That's just not what the law is. And then they say, you know, no court has gone our way. That is absolutely incorrect. If you look at the Kaplinger case, if you look at the concurrence in that, it says the adulteration provision does not apply to physicians' use of devices. If you look at the statute, 21 U.S.C. 396, it says physicians' use of devices is not covered by the FDCA. This whole case was Dr. Jackson's use of a device that's statutorily protected. So the government has to do what it's done and say, wait a minute, this isn't about use of devices. This is about insufficient cleaning. If that were true, she had to be able to introduce the testimony that she tested the devices and they were not contaminated. No patient was harmed, none. The court repeatedly said it's irrelevant whether patients are harmed. Can I ask you about when you say she should have been allowed to present the evidence with respect to cleaning and testing. She did talk about that, didn't she? It was the video that you were, do I have that right? That's what you're referring to, the video that wasn't allowed into evidence? Yes, she talked about her cleaning and then the jury is told it's irrelevant. It's irrelevant that they're not contaminated at 360, 3161, 3167. The question is, was there any issues with complications or cross-contamination? Objection. Sustained. Ladies and gentlemen, the United States, in connection with count one, does not have to prove that a single patient got sick. Well, of course if someone had gotten sick, that would be evidence that the devices were dirty. And so the converse is true as well. Unless you are adopting what was charged in the indictment. A lot of our employees testified that they were filthy. It's not that there's not evidence in the record of whether they were dirty. But there are pictures. Well, the pictures are taken, respectfully, the pictures are taken months and months and months later. She had shut down the office. The pictures have nothing to do with the condition at the time. And so, you know, this issue is that the district court told the jury, don't listen to evidence about whether they're actually dirty. That only makes sense if you're applying the per se standard, which is what is charged in the indictment. Well, what you just said, though, was that the district court prohibited any, or didn't think it was relevant that anybody got sick. Those are two different things, right? Here it says, did you have any cross-contamination? No. Objection. Sustained. And what was the basis? What did the district court then say? Ladies and gentlemen, I'll just remind you again, it's irrelevant. It does not have to prove cross-contamination. Cross-contamination, it doesn't, they don't have to prove it, but of course it's relevant if the issue is were they dirty. If the issue is you use single-use devices, it's not relevant. And so she wasn't allowed to defend herself on the fact that she actually cleaned the devices and they were therefore not dirty and not adulterated. And so she has to get a new trial, not on just this count, but all the counts. And if the government cites the Jefferson case, it does the perfect analysis. It says, you've got to go and see, is there any reasonable way a jury could have acquitted her? And a jury could have acquitted her on all the counts if they were properly instructed, if she were allowed to say, here's my cleaning process and it worked. I tested all these devices. They were not contaminated. Nobody got sick. I'll show you how I did it. She wasn't allowed to do that. And so the jury was told, she is a corrupt doctor because she reused single-use devices and you're not allowed to reuse them. That's not true. The government doesn't defend that theory. They just say that's not the theory. But that's what this trial was about. And once the jury hears she's doing something in clear violation of the law, which is not correct, of course they're going to judge her credibility differently. Of course they're going to think that she intended to defraud as it relates to the other counts. And so she has to be able to go in and say, here's how I cleaned them. I did it well. I tested for cross-contamination. I was a careful doctor. Not, you violated some law that doesn't exist that you can't disregard the cleaning of the label. You're allowed to do that. The statute says you're allowed to do what she did. She asked for the jury instruction on that. It was denied. She asked for a jury instruction saying it's not a per se crime to reuse a single-use device. That was denied. She was not allowed to defend herself by walking in and saying, I cleaned these things. They're therefore not dirty. I tested. They're therefore not dirty. She wasn't allowed to do that.  Thank you very much. Thank you. Thank you both for your arguments this morning. We very much appreciate it. We'll come down and greet you and then move on to our second case.
judges: Albert Diaz, G. Steven Agee, DeAndrea Gist Benjamin